UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL HANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV0720 TIA |
| | ) | |
| PORTFOLIO RECOVERY | ) | |
| ASSOCIATES, L.L.C. et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Daniel Haney brings this action against Defendant Portfolio

Recovery Associates, LLC ("PRA") and Defendant Gamache & Myers, P.C.

("Gamache") alleging four counts under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692e *et seq.* Plaintiff's claims arise out of three

collection letters and two lawsuits that were part of Defendants' efforts to collect

on consumer debts owed by Plaintiff. *See* (ECF Nos. 9-3, 9-4, 9-5, 9-6, 9-7, and 9-

8). Now before the Court is Defendants' joint motion for judgment on the

pleadings with respect to the First Amended Complaint. The motion is fully

briefed and for the reasons set forth below, the Court grants Defendants' joint

motion.

## I. BACKGROUND

Plaintiff, an individual consumer, acquired two credit cards for personal, family and household use; "the Wal-Mart card" issued by GE Money Bank, F.S.B./Wal-Mart and "the HSBC card" issued by HSBC Bank Nevada, N.A./Orchard Bank. The Wal-Mart card had an annual interest rate of 29.90% and the HSBC card had an annual interest rate of 26.99% which was subject to an increase to 29.99%, if the minimum payment on the HSBC credit card was not received by a as specified in the credit agreement.

Plaintiff defaulted on the Wal-Mart card, and on or about July 20, 2010, the issuing bank charged off the debt on the card. The charge-off amount was $1, 2248.88, representing a principal balance of $807.95 and finance charges of $416.93. At some point, Plaintiff also defaulted on the HSBC card and on or about June 30, 2010, the delinquent balance on that card was $740.16. Thereafter the issuing bank charged off the debt on the HSBC card.[1] After July 20, 2010, Plaintiff made no payment on either credit card account to the issuing banks or to PRA.

On April 19, 2011, approximately nine months after the charge-off of the Wal-Mart debt, Defendant PRA, an entity engaged in the purchase of debt for

---

[1]     Plaintiff does not allege and the record does not indicate what portion of the charged-off debt on the HSBC card was attributable to principal and what portion was attributable to finance charges.

collection, acquired the Wal-Mart debt. Similarly, at some point after June 30, 2010, the HSBC debt was assigned to PRA for collection. Following these purchases and assignments, PRA retained Defendant Gamache, a law firm, to assist it in collection efforts.

Almost two years later on April 11, 2013, Gamache sent a letter to Plaintiff indicating that, as of the date of the letter, Plaintiff owed $925.59 on an otherwise unidentified debt that had been purchased by PRA. The letter explained that Plaintiff could obtain additional information about the debt by making a written request within the next thirty days and referencing the specified internal account number included in the letter.

On April 23, 2013, PRA filed suit against Plaintiff on the Wal-Mart credit card debt (the "Wal-Mart suit") in the Associate Circuit Court for St. Louis County, Missouri, Case Number 13SL-AC13719.[2] (ECF No. 9-4.) In the petition, PRA alleged that Plaintiff owed $1,224.88 plus "prejudgment interest, as allowed by law, at the statutory rate from and after July 20, 2010 . . . ." The affidavit attached to the petition, signed and dated March 12, 2013, also indicated that the amount due from Plaintiff to PRA was $1,224.88. The charge-off identified above also was attached to the petition, but the original credit agreement was not included.

---

[2]    PRA's in-house counsel filed the Wal-Mart suit and a law firm other than Gamache initially handled the suit for PRA.

On May 16, 2013, Gamache sent Plaintiff a second letter indicating that, as of the date of the letter, Plaintiff owed $931.98 on a debt bearing the same internal account number it had referenced in the April 11 letter. On May 31, 2013, Gamache sent Plaintiff a third letter, indicating that, as of the date of the letter, Plaintiff owed $934.72 on a debt bearing the previously referenced internal account number. None of the aforementioned letters identified the source of the debt, or indicated whether interest was continuing to accrue on the account. [3]

On November 7, 2013, Gamache filed a lawsuit on behalf of PRA in the Circuit Court for St. Louis County, Missouri, Case Number 13SL-AC35735 (hereinafter the "HSBC suit") seeking to collect the HSBC credit card debt. (ECF No. 9-7). PRA alleged that "[PRA] is the assignee of HSBC BANK NEVADA, N.A./ORCHARD BANK to be repaid by [Haney] on the account, and it is entitled to recover from [Haney] the sum of $740.16, that being the balance due through June 30, 2010." (ECF No. 9 -7 at 4.) The suit did not allege that Plaintiff owed interest on this $740.16 amount. The original credit agreement was not attached to the petition.

---

[3] Although the collection letters do not explicitly identify the funds owed as the HSBC credit card debt, Plaintiff acknowledges that it is plausible that they may well refer to the HSBC debt, because the amounts referenced are less than the charged-off amount of the GE credit card debt, but do not exceed the charged-off amount of the HSBC card debt.

## II. APPLICABLE LAW

A. *Standard of Review: Motion for Judgment on the Pleadings*

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings. In reviewing a motion for judgment on the pleadings courts apply "the same standard used to address a motion to dismiss for failure to state a claim under [Federal Rule of Civil Procedure] 12(b)(6)." *Williams v. Employers Mut. Cas. Co*., No. 4:13–CV–2393 RLW, 2015 WL 892556, at * 2 (E.D. Mo. Mar. 02, 2015) (quoting *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (citation omitted)). Therefore, "'[a] grant of judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" *Williams*, 2015 WL 892556, at * 2 (quoting *Clemons*, 585 F.3d at 1124 (citation omitted)). The reviewing court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *See Ashley Cty, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Eckert v. Titan Tire Corp*., 514 F.3d 801, 806 (8th Cir. 2008) (citation omitted)).

B. *The FDCPA*

Section 1692e of the FDCPA states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The sixteen subparts of § 1692e prohibit specified

conduct, including false representation of "the character, amount, or legal status of the debt." 15 U.S.C. § 1692e(2)(A). In addition, §1692f generally prohibits a debt collector from employing "unfair or unconscionable means to collect" a debt and "allows the court to sanction improper conduct that the FDCPA fails to address specifically." *See Foti v. NCO Fin. Sys., Inc*., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) (internal quotation omitted). Section 1692f(1) of the FDCPA explicitly prohibits debt collectors from collecting "any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Under Eighth Circuit law, for purposes of the FDCPA, communications with debtors are measured against the "unsophisticated consumer" standard. The "standard is designed to protect consumers of below average sophistication or intelligence," *Strand v. Divers. Collec. Serv*., *Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (internal quotations omitted), [but] it also involves an element of reasonableness that prevents bizarre interpretations of debt collection notices." *Volden v. Innovative Fin. Sys., Inc*., 440 F.3d 947, 955 (8th Cir. 2006).

III. **DISCUSSSION**

A. *Choice of Law*

As a preliminary matter, Plaintiff argues that Defendants cannot prevail on

their joint motion for judgment on the pleadings due to certain unresolved choice of law issues. Positing that the underlying credit agreements contain governing law provisions, Plaintiff argues that his allegations concerning PRA's allegedly improper efforts to collect pre- and post-judgment interest cannot be considered until the original credit agreements are obtained through discovery or the Court makes its own choice of law determination on the basis of a more fully developed record.

The Court does not agree. The underlying credit agreements are not necessary for the resolution of this motion because Defendants seek to recover the statutory pre-judgment interest rate, allowable when no other rate is agreed upon, rather than the higher contractual interest rate. *See* Mo. Rev. Stat. § 408.040. Similarly, the post-judgment interest they seek is determined by Missouri statute. *See* Mo. Rev. Stat. § 408.020.

To the extent that any reference to state law is necessary here, it pertains to the pre- and post- judgment interest rates applicable in the state court suits. Regardless of which state's substantive law applies here those interest rates are procedural matters dictated by the statutes of Missouri, the forum state. *See Farmers Exch. Bank v. Metro Contracting Servs.*, Inc., 107 S.W.3d 381, 391 (Mo. Ct. App. 2003) (stating that courts must determine whether the issue presented is one of substance or procedure and that if it is a matter of procedure, there is no

dispute that the law of the forum state would apply); *see also FCS Advisors, Inc. v. Fair Finance Co., Inc.*, 605 F.3d 144, 147-148 (2d Cir. 2010) (recognizing that post-judgment interest rates are better characterized as procedural). For these reasons, the Court concludes that there are no unresolved choice-of-law issues to preclude its consideration of Defendants' motion for judgment on the pleadings.

B. *Count I*

In Count I, Plaintiff alleges, that the petitions PRA filed in the state court collection suits misrepresented the character of the debt in violation of 15 U.S.C. § 1692e. (ECF No. 9-4.) Specifically, Plaintiff asserts that PRA: (1) in the Wal-Mart suit, mischaracterized as "principal" an amount actually comprised of a principal plus interest; (2) stated in the HSBC suit that it was seeking damages of $740.16, without indicating whether the charge-off portion of this amount included any interest; (3) improperly sought, in the Wal-Mart suit, pre-judgment interest on an amount that already included accrued interest; (4) improperly represented in each suit that it sought 9.00% simple interest as post-judgment interest, when it effectively sought a greater compounded interest rate; and (5) failed to provide proof in the HSBC suit of valid assignment of the HSBC credit card debt.

With respect to the allegations in (1) and (2) above that PRA mischaracterized the amount of debt in each of the collection suits, the Court first notes that the challenged statements are found in the "wherefore" clauses of the

respective petitions.  Courts generally hold that such statements are not subject to scrutiny under the FDCPA, characterizing them as requests to the presiding court and not demands directed to the debtor.  *See, e.g.*, *Stratton v. Portfolio Recovery Assocs., LLC,* No. 13-147, 2013 WL 6191804, at*7-8 (E.D. Ky. Nov. 26, 2013) (refusing to find a FDCPA violation based upon a request for relief in a law suit, because such requests are directed to the court and do not constitute assertions that a specific amount is authorized by a credit agreement); *Argentieri v. Fisher Landscapes, Inc*., 15 F. Supp. 2d 55, 61 (D. Mass. 1998) (holding that a general prayer for attorney's fees in a collection complaint did not violate the FDCPA even where the credit agreement did not specifically authorize attorney's fees).  In addition, even if the FDCPA applied to such statements, in each petition at issue here PRA referred to the sum of principal and interest as either the "balance due" or "the outstanding sum."   (ECF Nos. 9-4 at ¶¶ 7, 11 and 9-7 at Count I, ¶ 9.) PRA did not label the amounts sought as "principal" and the Court cannot say that the aforementioned phrases would have been misleading to even an "unsophisticated consumer."  Moreover, the Seventh Circuit Court of Appeals has held that there is no basis for a finding of "misrepresentation" under the FDCPA where the debt collector describes a sum of money that contains interest as a "principal balance." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) (holding that "[t]he unsophisticated consumer, with a reasonable

knowledge of her account's history, would have little trouble concluding that the 'principal balance' included interest charged by the [original creditor], and observing that "[the debt collector could have *elected* to go a step further, disclosing the components of the debt it acquired-such as what [the debtor] charged on the card versus the interest and late fees levied by the [original creditor]-but it wasn't a matter of compulsion").

Finally, the FDCPA "does not require itemization of the debt in every communication, but rather a clear and accurate statement of the total amount due." *Goodrick v. Cavalry Portfolio Serv., LLC*, No. 12-1822, 2013 WL 4419321, *4 (D. Ariz. Aug. 19, 2013) (concluding that a dunning letter did not violate Section 1692e where it included the total amount due on the date the letter was sent, and observing that : "[w]hile Defendant's letters could have included additional clarifying language to itemize the principal and the interest portions of the debt or to reiterate the interest rate, the Court does not believe that the lack of those details can be considered false, deceptive, or misleading"); *see also Leffler v. Miller and Steeno, P.C.*, No. 13-1764, 2014 WL 1613946, *4 (E.D. Mo. Apr. 22, 2014) (holding that there was no FDCPA violation where the amount stated in the collection letter was the entire debt that the defendant was hired to collect although it did not specify the amount attributable to principal or interest ).

With respect to the third allegation in Count I regarding PRA's prayer for pre-judgment interest in the Wal-Mart suit, the Court notes that prayer cannot be deemed misleading inasmuch as it is consistent with the requirements of Missouri law. *See* Mo. Rev. Stat § 408.020. In addition, the Court concludes that the petition in the Wal-Mart suit does not, despite Plaintiff's allegation, misrepresent the amount of the debt by praying for pre-judgment interest on a sum that includes contractual interest. Here, PRA explicitly seeks pre-judgment interest "from and *after*" the date the suit was filed. (ECF No. 9-4) (emphasis supplied). Thus there is no support for the contention that PRA is seeking to collect both the contractual interest rate and the pre-judgment rate for the period after the suit was filed.

Plaintiff's fourth allegation in Count I is that the prayers for post-judgment interest in each suit are deceptive because they amount to requests for "interest on interest," violating the general prohibition on the compounding of interest on judgments. Upon review of the petitions and the parties' arguments, the Court concludes that these allegations cannot support a claim for relief. In both cases PRA prays for the amount of post-judgment interest permitted by law.[4] The Court finds nothing deceptive about such requests and without adopting the sort of

---

[4]    In the Wal-Mart suit, PRA prayed for post- judgment interest at the Missouri statutory rate. *See* Mo. Rev. Stat § 408.020. In the HSBC suit, PRA did not specifically state that it was seeking nine percent interest, but rather that it sought judgment in the sum of $740.16, "together with interest as provided by law . . . ." (Doc. 9-7.)

"bizarre interpretation[ ]" rejected by the Eighth Circuit under the "unsophisticated consumer standard," cannot conclude that these allegations state a claim for violation of the FDCPA. *Volden*, 440 F.3d at 955.

In addition, seeking statutory post-judgment interest on a sum that already includes contractual interest does not violate common law or statutory prohibitions on the collection of compound interest. *See Boatmen's First Nat. Bank of Kansas City v. Bogina Petrol. Eng'rs*, 794 S.W.2d 703, 705-706 (Mo. Ct. App. 1990) (holding that post judgment interest was properly assessed on a judgment that already included other interest because prohibitions on the allowance of compound interest, "are intended merely as regulations of interest on contracts and not interest on judgments"); *Big Bear Prop., Inc. v. Gherman*, 157 Cal. Rptr. 443, 447 (1979) (holding that the rule against the compounding of interest does not prevent the collection of post- judgment interest on a judgment which includes an award of interest); *In Rochester Carting Co. v. Levitt*, 326 N.E.2d 808, 811 (1975) (explaining that post-judgment interest, or interest on the judgment, is awarded on the theory that it is a penalty for delayed payment of the judgment).

Finally, in Count I Plaintiff also alleges that PRA misrepresented the character or amount of the debt sought in the HSBC lawsuit by pleading, without supporting documentation, that there had been a valid assignment of the consumer debt by HSBC to PRA. Plaintiff's allegation in this regard also fails because it is

settled law that the filing of a collection suit in the absence of immediate means to prove the validity and ownership of the debt does not constitute a false or deceptive practice in violation of 15 U.S.C. § 1692e. *See Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324, 331 (6th Cir. 2006); *Hickman v. Alpine Asset Mgmt., Grp., LLC*, No. 11-1236, 2012 WL 406 2694, at*5 (W.D. Mo. Sept. 14, 2012) (citing cases).

C. *Count II*

In Count II, Plaintiff alleges that Gamache violated 15 U.S.C. § 1692e by misrepresenting, in the collection letters sent to Plaintiff, the "character or amount" of the debt. Specifically, Plaintiff alleges that the letters violated § 1692e because they failed to identify the source of the debt, thus making it impossible for Plaintiff to verify its validity. The Court first notes that Plaintiff offers no case law indicating that the failure to explicitly identify the source of the debt constitutes a violation of the FDCPA. In addition, the first letter informed Plaintiff that he could obtain the name and address of the original creditor by making a written request for that information. There is no indication in the record that Plaintiff ever made such a request. (Doc. 9-3).

Moreover, even if the Court were to assume a misrepresentation resulting from the failure to identify the particular credit account at issue, there would be no FDCPA violation here because the alleged misrepresentation did not result in harm

to Plaintiff. There was no harm because the amounts sought in each letter were less than the amounts PRA could have legally recovered on either of Plaintiff's outstanding accounts.[5] *See Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) (reiterating that a false statement that causes no harm fails to satisfy the materiality requirement of a federal claim based on a false or misleading statement).

D. *Count III*

In Count III Plaintiff alleges that in the Wal-Mart suit PRA used an "unfair and unconscionable" means to collect a debt in violation of § 1692f(1) by: (1) seeking interest, fees and other amounts not permitted by law or in the written instrument creating the debt; and (2) seeking interest on amounts previously charged as interest, when such compound interest was not expressly permitted by the written instrument. (ECF No. 9 ¶ 36(a).)

---

[5] For example, the statement attached to the petition in the HSBC suit indicates that on June 30, 2010, the balance on the HSBC card was $740.16, $731.47 of which was subject to interest. (ECF No. 9-8.) Plaintiff alleges that he did not make any payments on the HSBC card after July 20, 2010, (ECF No. 9 ¶ 22), and that the applicable interest rates on the credit accounts at issue were 26.99%, with HSBC card being subject to an increase up to 29.99%. The amounts sought in the three letters were $925.59, $931.98 and $934.72. (ECF Nos. 9-3, 9-5 and 9-6.) Thus, if Gamache had applied an interest rate of 26.99%, the total amount owed on April 11, 2013, the date of the first letter, would have been $1,283.17,( a principal balance of $731.47 and $551.70 in accrued interest), a larger sum than the $925.59 requested in that letter.

Plaintiff specifically asserts that PRA violated the FDCPA because it sought "prejudgment interest, as allowed by law, at the statutory rate from and after July 20, 2010, plus interest on any judgment rendered by this Court at the rate of 9% per annum," which was not permitted by the written agreement or by law.  (ECF No. 9 ¶ 36.)  As noted above, it is doubtful that this request for relief found in the "wherefore" clauses of PRA's petition falls within the scope of the FDCPA.  *See Stratton*, 2013 WL 6191804, at *7-8.  (finding no §1692f(1)) violation based upon a request for relief in a law suit).

In addition, as further discussed in more detail above, PRA sought recovery of the balance due on the Wal-Mart account, $1,224.88, and pre-judgment and post-judgment interest.  The affidavit and statement of account attached to the petition demonstrates that the amount due was, in fact, $1,224.88.  Therefore, even if the prayer for relief were deemed a demand to the debtor, rather than a request to the court, *see Argentieri*,15 F. Supp. 2d at 61, this prayer would not violate the FDCPA because there is nothing unfair or unconscionable about seeking pre-judgment interest "as allowed by law" or post-judgment interest, which is permitted in accordance with state law.

Plaintiff also alleges the petition in the Wal-Mart suit was unfair or unconscionable because it effectively sought prohibited compound interest by seeking post-judgment interest on an amount that already included contractual

interest.  (ECF No. 9 ¶ 36(b)).  As discussed above, the allegation that PRA effectively sought "compound interest" when it prayed for post- judgment interest lacks merit.  *See Boatmen's First Nat. Bank of Kansas City*, 794 S.W.2d at 703, Thus, the Court cannot say that there was anything unfair or unconscionable about this request.

Plaintiff next contends that PRA's attempt to collect interest on the debts after they were charged-off by the issuing banks is a recognized cause of action under the FDCPA.  This argument lacks merit because the case on which Plaintiff relies concerns the collection of contractual interest, not statutorily imposed post-judgment interest.  *See McDonald v. Richard J. Boudreau & Assoc., LLC*, No. 13-259-ML, 2013 WL 3479273, *4 (D.R.I. July 10, 2013) (holding that amounts sought in a prayer for relief did not violate the FDCPA, despite the plaintiff's argument that the amounts sought were not authorized by the credit card agreement or applicable state law);*Winn v. Unifund CCR Partners,* No. 06-447, 2007 WL 974099 (D. Ariz. Mar. 30, 2007) (same).  In addition, the assertion that seeking pre-judgment interest "as allowed by law" could be false or unconscionable defies logic.

E.  *Count IV*

In Count IV Plaintiff alleges that Gamache violated § 1692f(1) by:  (1) failing to identify which credit card debts it was attempting to collect and making it

impossible for Plaintiff to ascertain the validity of either of the foregoing debts; and (2) unlawfully attempting to collect compound interest or interest inconsistent with the amount of the original charged-off debt.  These allegations also form the basis of the §1692e claim against Gamache set forth in Count II and are therefore subject to dismissal as duplicative.  (*Compare* ECF No.9  ¶¶ 34(a)-(b) *with* ECF No.9 ¶¶ 38(a)-(b))  Section 1692f "allows the court to sanction improper conduct that the FDCPA fails to address specifically."  *Foti*, 424 F. Supp. 2d at 667 (internal quotation omitted).  In this case "Plaintiff['s] complaint is deficient in that it does not identify any misconduct beyond that which Plaintiff[ ] assert[s] violate other provisions of the FDCPA."  *Id*. at 667 (citation omitted).  Finally, even if Count IV was not subject to dismissal as duplicative, it would fail as a matter of law for the reasons set forth above with respect to 15 U.S.C. § 1692e.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' joint motion for judgment on the pleadings is **GRANTED**.  (ECF No. 20.)

A separate judgment shall accompany this Memorandum and Order.


*Terry I. Adelman*
UNITED STATES MAGISTRATE JUDGE


Dated this 30th day of March, 2015.